Citation Nr: 1826233 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 03-26 504 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to an initial compensable disability rating for manifestations of Arnold-Chiari I Malformation (ACM) with cervical syringohydromyelia (CS) status post suboccipital craniotomy, to include the following symptoms: swallowing disorder, speech disorder, hearing loss, back symptoms, and chewing disorder.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Tracie N. Wesner, Associate Counsel



INTRODUCTION

The Veteran served on active duty in the Army from April 1979 to April 1982. He was awarded the Army Service Ribbon and Overseas Service Ribbon. 

This case comes to the Board of Veterans' Appeals (the Board) on appeal from a June 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which granted service connection for ACM/CS. The Veteran disagreed with the initial assigned rating. The Board remanded the Veteran's claim in August 2011 and September 2013 for additional development.

A November 2015 Board decision denied the Veteran's claim for an increased initial rating, and the Veteran appealed the decision to the United States Court of Appeals for Veterans Claims (the Court). In a June 2016 order, the Court vacated the November 2015 Board decision and remanded the matter to the Board for further proceedings consistent with a June 2016 Joint Motion for Remand (JMR). In September 2016, the Board remanded this matter for development consistent with the JMR.

The issue of entitlement to an initial compensable rating for ACM with CS status post suboccipital craniotomy (ACM/CS) is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Throughout the appeal period, the Veteran's impaired vision associated with ACM/CS has been productive of impairment in visual acuity with best corrected distance vision to 20/40 or better in both eyes, bilateral diplopia in all four quadrants, nystagmus and oscillopsia.

2. Throughout the appeal period, the Veteran's ACM/CS has been productive of thoracolumbar spasms, as well as spasms and weakness in the right lower extremity.

3. Throughout the appeal period, the Veteran's ACM/CS has been productive of left lower extremity spasms and weakness that causes his left leg to give way.


CONCLUSIONS OF LAW

1. The criteria for a 10 percent rating for nystagmus with oscillopsia, a residual of ACM/CS, have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.79 Diagnostic Codes (DC) 6016 (2017).

2. The criteria for a 30 percent rating for diplopia, a residual of ACM/CS have been met. 38 U.S.C. §§ 1155, 5103, 5103A (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.10, 4.79 DC 6090 (2006, 2017).

3. The criteria for a 20 percent rating for thoracolumbar spasm have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2017).

4. The criteria for a 20 percent rating for right lower extremity myelopathy have been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. § 4.124a, DC 8520 (2017).

5. The criteria for a 40 percent rating for left lower extremity myelopathy have been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. § 4.124a, DC 8520 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran seeks a compensable initial rating for his service-connect ACM/CS. He reports various residual symptoms as being related to his ACM/CS, including visual impairment, swallowing disorder, speech disorder, hearing loss, back and lower extremity symptoms, a chewing disorder and loss of balance. His ACM/CS is currently rated as noncompensable under 38 C.F.R. § 4.124a, DC 8024. Under this DC, a minimal, 30 percent schedular evaluation may be granted for syringomyelia; however, the rating schedule intends to provide the minimal compensable evaluation this disability in the absence of compensable impairment of motor, sensory, or mental function. See 38 C.F.R. § 4.124a, headnote. When separately compensable evaluations may be assigned for such impairments of motor, sensory, or mental function, those evaluations are assigned and combined as the greater benefit and the minimal evaluation is discontinued. Cf. M21-1.III.iv.4.G.5.b., (advising that if the combined evaluation for all disabilities due to MS is lower than the minimum compensable rating, the rating board should assign a 30 percent evaluation under 38 C.F.R. § 4.124a, DC 8018). In this case, the Veteran is currently separately compensated for a mood disorder and tinnitus, both rated at 10 percent disabling. The Veteran is also in receipt of a noncompensable rating for vision impairment as due to ACM/CS.

The Veteran was provided with a VA examination addressing his reported residuals of ACM/CS in November 2016. The November 2016 VA examiner noted the Veteran's reports of low back spasms and radiating pain, numbness and paresthesias into the Veteran's right and left lower extremities. The Veteran was noted to have weakness in the left arm and leg, and spasms in all four extremities. The examiner found that the Veteran's back spasms and lower extremity symptoms were related to his service-connected ACM/CS.

With regard to the Veteran's loss of balance, the November 2016 VA examiner found that the Veteran's balance problems were affected by his functional peripheral visual problems (very limited cervical spine range of motion) and occasional blurred vision. As the Veteran's visual impairment is a residual of his ACM/CS and impacts his reported balance problems, the Board has jurisdiction to address the rating for the Veteran's visual impairment. 



Visual Impairment

During the appeal period, the evidence shows that in addition to suffering decreased visual acuity as a result of the Veteran's ACM/CS, he has also suffered from bilateral diplopia (double vision) in all four quadrants, nystagmus and oscillopsia. He is currently in receipt of a noncompensable rating for visual impairment based on his best corrected visual acuity in both eyes to 20/40 or better. No other ratings are assigned for his other symptoms.

As the Veteran appealed the initial rating assigned, the appeal period before the Board begins May 30, 2006, the effective date of service connection for ACM/CS. During the appeal period the rating schedule governing ratings for visual impairment were amended. The Board is required to consider the claim in light of both the former and revised schedular rating criteria. The amended rating criteria, if favorable to the claim, can be applied only for periods from the effective date of the regulatory change. However, the old regulations will be considered for the periods both before and after the change was made. See VAOPGCPREC 3-2000, 65 Fed. Reg. 33,422 (2000); DeSousa v. Gober, 10 Vet. App. 461, 467 (1997).

Diplopia (double vision)

Viewing the evidence of record in the light most favorable to the Veteran, the Board finds that he has exhibited diplopia in all quadrants throughout the appeal period. He is not currently in receipt of a rating for this condition.

In this case, the Board appreciates no discernable difference between the regulations in effect prior to December 10, 2008 and the amended regulations in effect after this date with regard to a rating for diplopia. Compare 38 C.F.R. § 4.84a, DC 6090 (2006) with 38 C.F.R. §§ 4.78, 4.79 DC 6090 (2009). Both the old and new regulations provide that evaluations are based on the degree of diplopia and the equivalent visual acuity, and that the rating for diplopia is applicable to only one eye. Separate ratings are not permitted for both diplopia and decreased visual acuity or field of vision in the same eye under either the former or new version. Additionally, both sets of regulations allow for an adjustment to the best-corrected visual acuity to account for diplopia. 38 C.F.R. § 4.84a, DC 6090, Note 4 (2006); 38 C.F.R. § 4.78(b)(3) (when diplopia exists in two individual and separate areas of the same eye, the equivalent visual acuity is taken one step worse, but no worse than 5/200). Under both the old and the new regulations, if diplopia manifests centrally at 20 degrees, it is rated equivalent to a visual acuity of 5/200. 38 C.F.R. § 4.84a, DC 6090(a); 38 C.F.R. § 4.79, DC 6090(a). This is the highest equivalent visual acuity permitted. Finally, under both the old and the current version of the rating criteria, a 30 percent rating is warranted for impairment of visual acuity with best corrected vision in the poorer eye to 5/200 and best corrected vision in the better eye to 20/40. 38 C.F.R. § 4.84a, DC 6074 (2006); 38 C.F.R. § 4.79, DC 6065 (2009). 

With the foregoing in mind, and in light of the May 2017 VA examination and June 2017 opinion, the Board finds that the Veteran's service-connected diplopia warrants a disability rating of 30 percent. These VA examinations show that the Veteran has diplopia in all four quadrants, which the Board finds more nearly approximates diplopia centrally at 20 degrees. Furthermore, the evidence shows that the Veteran's worst "best corrected" vision in both eyes during the appeal period has been to 20/40 or better. Under DC 6065, where vision in one eye is 5/200 and vision in the other eye is 20/40, a 30 percent rating is warranted.

The Board notes that under 38 C.F.R. § 4.78(b) effective December 10, 2008, when a claimant has both diplopia and decreased visual acuity or a visual field defect, the level of corrected visual acuity for the poorer eye is adjusted by one, two or three steps poorer depending on the equivalent visual acuity assigned for diplopia under DC 6090. This adjusted level of corrected visual acuity, however, must not exceed a level of 5/200. 38 C.F.R. § 4.78(b)(1). In this case, because the Veteran's evaluation of the poorer eye is already at the maximum of 5/200 (based on diplopia centrally at 20 degrees), no adjustment is warranted. 38 C.F.R. § 4.78(b)(1).

Accordingly, a 30 percent initial rating for the Veteran's service-connected diplopia is warranted during the appeal period. 


Nystagmus with Oscillopsia

The Veteran's VA treatment records, private treatment records and VA examinations show that he has suffered from nystagmus with oscillopsia due to his ACM/CS throughout the appeal period. Both prior and subsequent to the December 2008 change, nystagmus is rated under DC 6016, which provides a 10 percent rating for nystagmus, central. 38 C.F.R. § 4.84a, DC 6016 (2006); 38 C.F.R. § 4.79 DC 6016 (2008). No other rating is provided by this code. Nystagmus is the involuntary, rapid, rhythmic movement of the eyeball, which may be horizontal, vertical, rotary, or mixed. See Dorland's Illustrated Medical Dictionary 1296 (32nd ed. 2012). Central nystagmus is jerk nystagmus caused by a lesion somewhere in the neurologic pathways regulating gaze. Id. at 1308. Oscillopsia is a symptom that sometimes accompanies nystagmus in which objects appear to wiggle, jerk or move back and forth. Id. at 1342. 

Separate, compensable evaluations may be afforded for distinct disabilities resulting from the same injury as long the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259 (1994). Here, both the former and current version of the regulations prohibit the assignment of more than one rating for impairment of visual acuity and impairment of muscle function/diplopia. See 38 C.F.R. § 4.84a, DC 6090 (2006); 38 C.F.R. § 4.78(b)(1) (2009). Nevertheless, the Board finds no prohibition in the regulation against assigning a separate rating for nystagmus with oscillopsia. Moreover, as the symptoms associated with nystagmus with oscillopsia (involuntary, rapid, rhythmic movement of the eyeball causing objects appear to wiggle, jerk or move back and forth) appear to be wholly separate from impairment of visual of muscle function (diplopia or double vision) and impairment of visual acuity, the Board finds that a separate 10 percent rating for nystagmus with oscillopsia is warranted under DC 6016 throughout the appeal period. This is the highest rating provided under the Rating Schedule for nystagmus.



Thoracolumbar and Bilateral Lower Extremity Spasms

The Board further finds that separate ratings are warranted for the Veteran's thoracolumbar pain and spasms as analogous to lumbosacral strain and right and left myelopathy as analogous to sciatic radiculopathy for spasms and motor dysfunction resulting in an altered gait. During the appeal period the Veteran has reported suffering low back spasms causing both legs to kick spontaneously. See October 2013 VA Examination Report. The VA examiner further noted that the Veteran takes multiple medications for his central nervous system conditions, including pain medications, muscle relaxants and valium. Diagnostic Code 5237 concerning lumbosacral or cervical strain directs VA to rate the Veteran under either the General Rating Formula for Diseases and Injuries of the Spine or the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. 38 C.F.R. § 4.71a, DC 5237. Under the General Formula for rating a disability of the spine, a 20 percent evaluation is warranted for muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Here, the evidence shows that the Veteran's low back spasms result in an altered gait in that he reports losing his balance in part due to his low back spasms. Thus, a 20 percent rating is warranted for the Veteran's thoracolumbar spasms.

The evidence also supports a rating of 20 percent for right lower extremity myelopathy and 40 percent for left lower extremity myelopathy throughout the appeal period. Diagnostic Code 8520 provides ratings for paralysis of the sciatic nerve. 38 C.F.R. § 4.124a (2017). Disability ratings of 10, 20, and 40 percent are warranted, respectively, for mild, moderate, and moderately severe incomplete paralysis of the sciatic nerve. 38 C.F.R. § 4.124a, DC 8520. The term "incomplete paralysis" indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a. Here, the November 2016 VA examiner noted that the Veteran suffered from pain, numbness, weakness and spasms in his right and left lower extremities that were related to his ACM/CS. The Veteran reported intermittent pain and numbness in the right lower extremity and more severe weakness in his left lower extremity causing his leg and knee to give way. He states that he has fallen numerous times because of his left leg giving way, and his reports are supported by his VA medical records. See February 2016 VA Examination Report. Thus, the Board finds that a 20 percent rating is warranted under DC 8520 for the Veteran' right lower extremity myelopathy and a 40 percent rating is warranted for left lower extremity myelopathy. 


ORDER

An initial 30 percent rating for diplopia is granted, subject to the law and regulations governing the payment of VA monetary benefits.

An initial 10 percent rating for nystagmus with oscillopsia is granted, subject to the law and regulations governing the payment of VA monetary benefits.

A 20 percent rating for thoracolumbar spasms is granted, subject to the law and regulations governing the payment of VA monetary benefits.

A 40 percent rating for left lower extremity myelopathy is granted, subject to the law and regulations governing the payment of VA monetary benefits.

A 20 percent rating for right lower extremity myelopathy is granted, subject to the law and regulations governing the payment of VA monetary benefits.


REMAND

In an April 2017 statement, the Veteran reports that his ACM has worsened. As such, new VA examinations are necessary to determine the nature and severity of the Veteran's ACM residuals. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding VA medical records and ask the Veteran to provide authorizations for any private medical records he would like considered in connection with his appeal. 

2. Schedule the Veteran one or more appropriate VA examinations to determine the nature and severity of all manifestations of his ACM with cervical syringohydromyelia. 

To the extent feasible, the examiner should identify and address the severity of all symptoms the Veteran experiences as a result of his ACM, **including but not limited to: **

(a) swallowing disorder;
(b) speech disorder;
(c) hearing loss (a separate audiological examination should be undertaken);
(d) back disorder, including pain radiating into his legs;
(e) loss of balance; and
(f) chewing disorder.

In so doing, the examiner should elicit from the Veteran a report of symptoms he asserts are related to his ACM, and should consider the Veteran's lay statements in that regard elsewhere in the record. The examiner should also consider other medical evidence of record and treatise evidence submitted by the Veteran. For any symptoms identified by the Veteran that are subjective in nature, the examiner should indicate if they are more likely attributable to other disease or no disease. 38 C.F.R. § 4.124a, Diagnostic Code 8024, and Note pertaining to Diagnostic Codes 8000-8025.

For the Veteran's orthopedic disabilities, the examiner should conduct all indicated tests and studies, to include range of motion studies. The joints involved should be tested in both active and passive motion, in weight-bearing and non weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The examiner should describe any pain, weakened movement, excess fatigability, instability of station and incoordination present. 

The examiner should also state whether the examination is taking place during a period of flare-up. If not, the examiner should ask the Veteran to describe the flare-ups he experiences, including: frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment he experiences during a flare-up of symptoms and/or after repeated use over time. 

Based on the Veteran's lay statements and the other evidence of record, the examiner should provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after repeated use over time. If the examiner cannot estimate the degrees of additional range of motion loss during flare-ups or after repetitive use without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

3. After completing the above development, including any additional development that may be warranted, readjudicate the appeal.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).





______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs